The next case is Cook v. Best One Tire & Service of Harrisburg and we have Ms. Cooksey and Ms. Thompson. Okay, right up there, good. Okay, Ms. Cooksey, when you're ready, let's proceed. Thank you, Your Honors. May it please the Court, Counsel, my name is Christy Cooksey and I represent Bob Cook, who's the plaintiff in this case. This is a slip and fall case and a summary judgment was entered on behalf of the defendant based upon the finding that the condition upon which Mr. Cook fell on was open and obvious. I believe that finding is an error and of course I'm going to argue the facts because this is a summary judgment motion and I do believe that there are multiple questions of fact in this case and I am going to refer to some testimony. First, I'm going to refer to the testimony of the plaintiff. The testimony of the plaintiff is I called Best One, told them I was coming in, I pulled around the back. Now, we've got to think about what this building is. This building is basically a tire shop with a front office, side base for cars, and they repair the semi-trucks in an alley in the back. It's just an alley. And in the back, there are two steel doors and those are depicted by photographs in the record, color photographs, several of them, that are either closed or opened and that fact is disputed and we'll get to that. The truck drivers pull up into the alleyway and at this point, my client testifies that on the day of the injury, he pulled into the alleyway and he was met by the salesman, Jared Abney, at his truck gap. He testified that Mr. Abney, he told Mr. Abney what the problem was with his truck and Mr. Abney said, I'd like to show you some centering pins that I think we should use on your truck. Let's go in. He escorted him into the back of the shop. He testified that he went into the back of the shop and that he looked in it, that centering pins were taken out of the cabinet on the wall and shown to him. He said he had heard of them before at other truck stops but he had never seen them before and he had never had them put on his truck before. His testimony is that after looking at the centering pins, he agreed that they could be used in his repair and he proceeded to exit the building. Now, what he testified to and what is clearly depicted in the pictures is that these steel doors, he testified, were open on the day that he showed up, that Mr. Abney walked out, talked to him and they walked back up the ramp. He testified that he did in fact step over a, not the, a hose on the way in. The repairman verified that, yes, it was a very busy morning. I had just finished a truck repair in the alley. I was trying to get to lunch. This was about noon. My usual lunch hour is 11 to 12. I was trying to finish up paperwork. That's why the salesman rushed out and said, hey, I'm going to go bust here. Let's hurry up and get him out here. So that's why he was met not by the repairman but by the salesman. The salesman sold him something, is what Mr. Cook testified to, and as they turned to walk out of the rear of the truck, or rear of the store, he testified that he felt a hose come over his foot and he fell. He said, I felt it pulled on my foot. Somebody had to have pulled it. That's his testimony. He was asked, did you see the hose on the way in? He absolutely testified he did, that there was a hose on the ramp. I don't think that that's disputed by anyone. Mr. Jones said, I left it on the ramp because I was in a hurry. But what he didn't testify to was that he fell on the exact same hose that he stepped over when he entered into the back of the store, and I think that's where the judge in this case got this case wrong. Mr. Cook's testimony was there was more than one hose in there, that I was inside the building turning to leave when I fell, that Mr. Abney had proceeded ahead of me, was gathering tools. Mr. Jones was getting up to help him go, and I told him, hey, I'm going to go wait in my truck, and I exited the building. At that point, I fell inside the building. That's what he said. He fell inside by the door, and he ended up falling somewhat outside of the building. Now, respondent has characterized this case as he stepped over a hose, he walked in, or he didn't even go into the building, he turned around, failed to step back over the same hose, and fell. That's not Mr. Cook's testimony, and this is a summary judgment proceeding, so we have to believe what he said was true. You look at the pictures of the back of the store, and you look at the testimony, you'll see there is more than one hose reel mounted on the back of the door. There are also other hoses in the store, five per bay on the one side, and you can see other tools and hoses depicted in the picture. Mr. Cook could not testify who pulled the hose. He could not testify which hose he fell on. In fact, he heard that and he said, I was all the way around in front of his truck when he fell, never saw him, just never saw the fall, just came around to help him up. Tony Jones' testimony is he's behind a closed door in the back of the shop, and somebody opened the door and told him he fell, and my client was on the ramp the whole time. This is a question of fact. We don't even know how this accident happened, and it is up to a jury to decide that. Mr. Cook's testimony, if it is to be believed, which it has to be at this stage of the proceedings, is that I was invited into the rear of the store where there were multiple hoses. Yes, I stepped over the one on the ramp. I saw it there. I did some shopping with the salesman. I made my order, and on the way out, I felt a hose pulled over my foot, and I fell. I believe it was pulled over my foot. He was asked specifically, did Mr. Jones pull it? He said, I didn't see him, but, and then he didn't finish that answer. I can't change that here. He said, I didn't see him, but. Mr. Cook testified that when he went down, he hit his chin, he hit his hands, he was bleeding, his tooth was broken. He was a mess, okay? This fall happened fast. Nobody saw the fall, but the defendant in this case has characterized this as, well, he fell in the same spot over the same hose. We know exactly what happened. He just tripped. This is an open and obvious hazard. He didn't proceed to protect himself against it. Summary judgment for us. And I believe that based upon the transcripts in this case, that cannot be the decision of the trial court, and that cannot be the decision here. This is a case that needs to be decided by a trier of fact. It's clear, several things are clear in the record. Respondent, I'm sorry, I'm back at the commission. Defendant knew that this wasn't the safest condition. They testified that while it was customary for people to be in the back of the shop, to come into the back of the shop, that basically we knew it wasn't very safe. We tried to avoid it. We tried to pick up hoses. We've seen people trip and fall before. We know this is an issue. But so I don't think that's really the issue in this case. The main issue in this case is there are questions of fact for the jury to decide. One simple one that I like is that we don't even know if he was in the back of the shop or not. And if my client is to be believed, if he did enter the back of the shop, what's interesting is Tony Jones said, well, nobody knows that those centering pins are in a cabinet on the wall. Well, Mr. Cook sure did know. He testified exactly where they were. And he's never been back to the shop since. Was this a place where he was supposed to be or was he just allowed to be there? Based upon his testimony, he was in his truck and invited in to view the pins to make a sale. Otherwise, this is not an area for customers to go into. This is the work area. Well, and there's different testimony on that issue. I believe that in general the defendant said, hey, look, you know, we don't like to have customers back here, but it happens all the time and this is what we do. There's no testimony that there's orange cones or a red stop sign, like when you would pull up to an oil repair place and then someone comes out to meet you and says, hey, I'm going to stay in your car, don't move, or let me take you to a waiting room and we'll talk with you at a clipboard. This is a case where they're saying six to eight times a day people are walking into the back of the shop, walking up to the back of the shop. As a matter of fact, during the cold weather, when the doors are closed, the only way for a trucker to get assistance, if nobody sees him pull around, is to come up and knock on the door. And that was the usual custom and practice of the place. Now, they testified, no, we don't really like that. But these doors are open so that they can get service by driving right back into the alley. It seems that the trial court based its decision on the fact that it was an open and obvious condition and that condition had not changed from the time he entered until he left. But we don't know that, right? That's what the trial court decided? The trial court did make that decision and that's why we're here is I believe that that is not well supported by the record. If you look at Mr. Cook's testimony, that is not what he testified to. He believed it had changed, he felt something pull over his foot, and that's what he testified to. So I think it's a question of fact and the jury gets to decide who to believe. Are there any other questions? No. Thank you. Ms. Thompson? Good morning, Your Honor. Good morning. Counsel testifies that there are various questions of fact that still exist. However, these are not material questions of fact. Counsel testified or stated that the plaintiff was inside the shop or may or may not have been inside the shop. However, it doesn't matter. What the plaintiff testified was that he saw hoses. The plaintiff testified, and I quote, And when I walked in to look at the centering pins, there was one, meaning a hose, laying across the floor. He clearly saw a hose inside of the shop. It doesn't matter if the plaintiff saw the specific hose that he tripped over. Looking at the Garcia case, which involved a plaintiff who walked into a road where there were potholes, he knew that there were potholes in the road. He said he did not know about the specific pothole that he tripped in. The court said it doesn't matter. He was aware that there were potholes in the road, which makes the specific pothole, regardless of whether he knew about that one, open and obvious. Likewise, in Wilfong, which involved a plaintiff who was walking on ruts at a construction site, said some of these ruts are not visible. They're covered by water. They're covered by mud. But the court said it doesn't matter. He was still aware that there were ruts, making the ruts open and obvious. He seems to be arguing, just to take your analysis, that the pothole moved, the hose moved around his foot or it was pulled tight and caught his foot. So that may be a distinction between the pothole that doesn't move. Correct. The only thing with the pulling on the air hose, and I realize that that is the plaintiff's contention, that the air hose was pulled, it's complete speculation. There are absolutely no facts to support it. There's no testimony. He said the only two people in the back truck area were Jared Abney, who was, quote-unquote, the salesperson, though he was going to do the mechanical work on the truck that day, which he testified to, and Tony Jones, the tire technician, who was getting ready to leave. They were the only two people in the area. He said he didn't see either one of them pull on the hose. Those are the only two hoses back there. As counsel just said, Jared testified he was in front of the truck, and Tony testified he was behind a door. So the whole pulling on the hose is complete speculation. The plaintiff's contention is, well, someone had to pull on it because he tripped on it. Well, I mean, that's not supported by any facts. And just as the trial court said, there's no evidence to support that. It's just speculation.  The plaintiff relies on various cases saying that it should be a question of fact, it's open and obvious. However, these are all easily distinguishable, and the Wilfong Court said it is a question of law if something is open and obvious when there's no dispute about physical nature. Here, there are no facts to support a dispute of a physical nature. The plaintiff said he saw a hose inside of the building. He said he stepped over at least one hose to get into the building. And I will agree that our employee said that he did not go in the building. However, I don't think it's material fact. If we assume that all the plaintiff's contentions are true, he went in the building, it really doesn't make a difference. He knew there were hoses present. He has absolutely no evidence to support the fact that the hoses changed or moved or anyone pulled on them. He didn't see anyone pull on them. He did not testify to that. In their brief, the plaintiff also makes the argument that one of the two exceptions to the open and obvious rule apply, those being the distraction and the deliberate encounter. The distraction, again, no facts support it. He does not testify that he was talking or thinking or anything at the time. The plaintiff seems to argue that he was so involved with thinking about this repair option, though I will note that counsel said that he had never seen the centering pins before, though he clearly testified he had seen the centering pins in a magazine. He also testified he had seen them in other shops. He knew what they were. Further, they're not something that you buy and keep. The centering pins are used to ensure that lug nuts are straight, and then they are taken off and put back into a cabinet. They're not something that you purchase. They're just a tool used on the car. And he knew what they were. Further, this could not be a serious repair option because he did not even know they had them, is what he testified, so clearly the repair could have been done without them. Further, they're in a small black case, which, again, you have a picture of. They could have been brought outside if he really wanted to see them without walking inside. Further, getting on to the deliberate encounter exception, yes, there is a ramp in the back, and yes, people do use that. However, plaintiff wants to relate this to the Simmons case in which they said there was a deliberate encounter because it was the only means of ingress and egress. Here, that is not the case. There is a front door to which all truck drivers can walk around to. Tony Jones, a tire technician, said usually drivers go to the front. Jerry Abney, the general manager, said the normal procedure is to walk around the building to the front. Jared Abney, the salesman who was present that day, said typically the drivers go around front, but it's their choice. In Wilfong, another case, there was a gravel path 60 to 70 feet away, but the plaintiff chose to walk on the ruts. The court said there is no deliberate encounter because the plaintiff chose to tackle the ruts. Plaintiff, in their brief, said that it was 40 yards to walk around to reach the storefront without walking through the back. Plaintiff could have done this. Plaintiff could have gone around, avoided any hoses whatsoever, but he chose not to. In sum, the case is exactly what it seems. It seems to me that the trial court started analyzing facts because the complaint makes an allegation that somebody pulled the hose, whether the hose was stable and didn't move or didn't move. How can the trial court make that without hearing evidence? Well, there is no evidence to support that claim. But it's an allegation at this point. True, but I... That she has the burden to prove. Right. I think the plaintiff needs to, well, case law says the plaintiff needs to provide some sort of facts that would arguably entitle them to judgment. Here there aren't any facts that would arguably entitle them to judgment because there are no facts supporting that claim. In fact, there are many, there's, it's just that there's no dispute. I mean, there's nothing to argue with. He's just, he's speculating and assuming, well, someone must have pulled it, but he has nothing to support that. Did he say he felt it or that he just assumed it? Did he say, I felt something catch my foot, or I assume that's why I fell, which is a pretty big difference. You know, I honestly don't recall. I think he said that it ended up wrapped over his foot. Okay. But that might have been after he went down. He could have hit it with his other foot. I mean, I guess there's, but again, that is getting into the facts. But still, there is no evidence to support this other than him just saying, well, someone had to. Well, that's not evidence. That's not supporting the claim at all. I think that the case is what it seems. While maybe he didn't step over this hose, though to me it seems logical if you're walking in to walk back over a hose, you would almost have to step over it in the first place to step back over it. I don't really know how it would magically appear to walk back over it if he already stepped, you know, had to get in there in the first place, as he's alleging. But regardless, he said he saw hoses, like the other cases say. He didn't need to see the specific hose in order for it to be open and obvious. I think it's clear it was open and obvious. Neither of those distractions should apply. And as such, there is no genuine issue of a material fact, and summary judgment should be affirmed. Okay. Thank you. Any rebuttal? Thank you, Your Honor. My rebuttal would simply be briefly that when the plaintiff's testimony is not evident, I don't know what my job is as a lawyer because the plaintiff's testimony is somebody pulled a hose across my foot. The jury has a right to believe him or to not believe him. I guess it's back to that. Why did he say that? Because that's what he assumed or that's what he felt? He felt someone pull a hose across his foot. Now, I don't know that it's – I would have to read the 130-page deposition again to find every word, but that is what he said and that is what he'll testify to. There's also clearly circumstantial evidence. There were people working around him in a hurry. Jared Abney says – I mean, he says Jared was there gathering tools, getting ready to go work on his truck. Jared Abney says, I had already started to go around the truck and jack it up, which would have meant moving tools and moving things. He believed Tony Jones was doing the same thing. So there's work going around him. He feels something catch on his foot. He falls. He believes someone pulled the hose.  And the other interesting fact that I didn't bring up on my initial argument is, one of the things that happened two months before the deposition is Jared Abney says, I threw away the repair order. I got mad. I was cleaning off my desk, and I threw it away. That would have been documentation as to what repair was done on his car that day, whether or not centering pins were involved. That's something critical for the jury to look at to either believe or not believe either my client or Mr. Abney about the nature of the repairs, his business in the back of the shop, and what was going on at the time. So I think that there's a lot of issues here that I think a jury can decide, and it should be left to them. Thank you. Thank you. Thanks, both of you, for your arguments and briefs. We'll take the matter under advisement and try to get you an order on the first possible day.